UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARTIN DICKINSON, | : | PRISONER |
| *Plaintiff* | : | DOCKET NO. 3:03CV970 (PCD) (JGM) |
| v. | : | |
| | : | |
| KEITH SCOTT, ET AL., | : | February 10, 2004 |
| *Defendants* | | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

This action, filed by a patient acquittee who is receiving treatment at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting), purports to be based on 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act (ADA) and the Connecticut Patients' Bill of Rights, Conn. Gen. Stat. § 17a-540, et seq.  Patient acquittees are persons who have been adjudged not guilty of criminal charges by reason of mental disease or defect.  Conn. Gen. Stat. § 53a-13; see also Conn. Gen. Stat. § 17a-580.  These persons have admitted committing criminal acts, but were found to lack substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of their conduct or to control their conduct within the requirements of the law.  Conn. Gen. Stat. § 53a-13(a).  Whiting is a maximum security facility operated by the Connecticut Department of Mental Health and Addiction Services (Department) that provides treatment for patients who are both mentally ill and dangerous.  Conn. Gen. Stat. § 17a-561.

The named defendants, who are sued in both their individual and official capacities,[1] were all employed at Whiting, except for Garrell Mullaney, the Chief Executive Officer of Connecticut Valley Hospital.  Complaint, ¶¶ 3-7.  The plaintiff's prayer for relief seeks money

damages pursuant to the ADA, as well as a declaratory judgment that certain alleged actions of the defendants violated the ADA, the Fourteenth Amendment to the United States Constitution, a Consent Order entered in *Roe v. Hogan*, Civil No. H 89-570 (PCD) and the Connecticut Patients' Bill of Rights.  Complaint, pp. 11-12.

## **FACTS**

The plaintiff alleges that the defendants took the following actions in violation of his rights:  on August 31 2001, defendants Scott and Foster restricted the plaintiff's right to treatment as authorized in his treatment plan in a discriminatory manner (Complaint, ¶¶ 11-15); the defendants Scott, Foster, Cassidy and Mullaney submitted a report dated January 3, 2002 to the Connecticut Psychiatric Security Review Board (PSRB)[2] containing a fictitious recommendation that the plaintiff be confined under conditions of maximum security (Complaint, ¶¶ 16-19); in September, 2002, the defendants Scott and Foster placed the plaintiff on a restricted calorie diet without his consent or clinical need (Complaint, ¶ 21); on December 5, 2002, the defendants Scott and Foster restricted the plaintiff from dining in the unit dining room because he had eaten three boxes of cereal rather than two boxes (Complaint, ¶ 23); on December 5, 2002, the defendants Scott and Foster placed the plaintiff in overnight seclusion, which resulted in the plaintiff sleeping on a mattress on the floor of the seclusion room at Whiting (Complaint, ¶ 24); and that the defendants Cassidy, Arata and Mullaney condoned

---

[1] The complaint does not specify that Keith Scott, M.D. is being sued in both his individual and official capacities.  Consistent with the treatment in the complaint of all other defendants, however, it is assumed that Dr. Scott is also being sued in both capacities.

[2] Pursuant to Conn. Gen. Stat. § 17a-580, et seq. acquittees such as the plaintiff are committed to the jurisdiction of the PSRB.  The PSRB is charged with, among other things, the responsibility of determining whether an acquittee is a person who should be confined in a hospital for psychiatric disabilities, and, if so, whether such person requires confinement under conditions of maximum security.  Conn. Gen. Stat. §§ 17a-584 and 17a-599.

practices of the defendants Scott and Foster and failed to perform their duty to intervene to correct violations of the plaintiff's rights (Complaint, ¶ 27).

The plaintiff requests declaratory relief based on his claims that: the defendants' recommendation to the PSRB violated his rights under the ADA and the Fourteenth Amendment; the treatment restrictions imposed on him violated his rights under *Roe v. Hogan* and the ADA; the actions of the defendants in placing him on a restricted diet violated the Connecticut Patients' Bill of Rights; and the actions of the defendants which resulted in the plaintiff sleeping on a mattress on the floor of the seclusion room violated the Connecticut Patients' Bill of Rights. Complaint, pp. 11-12. The plaintiff additionally requests compensatory and punitive damages pursuant to the ADA. Complaint, p. 12.

## ARGUMENT

### I. THE DEFENDANTS ARE NOT SUBJECT TO SUIT UNDER TITLE II OF THE ADA

**A. The Defendants Cannot Be Sued In Their Individual Capacities Under The ADA**

The plaintiff cannot bring an ADA Title II claim against the defendants I their individual capacities. In *Garcia v. S.U.N.Y. Health Services Center of Brooklyn*, 280 F.3d 98 (2d Cir. 2001), the Second Circuit Court of Appeals squarely addressed this issue and determined that Title II does not permit individual capacity suits: "[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." 280 F.3d at 107; see also *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999) (en banc). Accordingly, these claims must be dismissed against the defendants in their individual capacities.

**B. The Defendants Cannot Be Sued In Their Official Capacities Under the ADA**

Just as the plaintiff cannot bring an ADA Title II claim against the defendants in their individual capacities, so too he cannot bring such a claim against them in their official capacities. In *Winokur v. Office of Court Administration*, 190 F.Supp.2d 444 (E.D.N.Y. 2002), the court dismissed claims under Title II of the ADA against a state official in both his individual and official capacities, having concluded that an individual named in an official or representative capacity "may not be held liable in his official capacity under the ADA." 190 F.Supp.2d at 450. The *Winokur* decision relied on the following reasoning of the court in a previous cased decided in this Circuit, *Lane v. Maryhaven Center of Hope*, 944 F.Supp. 158 (E.D.N.Y. 1996):

> Further, there is no distinction made in Title VII or the ADA or Rehabilitation Act for lawsuits brought against other employees in their official capacities, as opposed to lawsuits brought against those employees in their individual capacities. Accordingly, the Court declines to impose such a distinction in order to provide some type of 'moral sanction' where no other cause of action exists, and Lane's alternative request that his ADA claim survive against Bryant in his official capacity is denied..

944 F.Supp. at 163. It is noteworthy that the decision in *Winokur* was issued subsequent to the decision of the Second Circuit in *Garcia*, which is cited in *Winokur*. 190 F.Supp.2d at 449. For the reasons relied upon by the courts in *Lane* and *Winokur*, the Title II ADA claims against the defendants in their official capacities must also be dismissed.[3]

It should also be noted that the plaintiff's claims for money damages are limited to his purported ADA causes of action. Complaint, p. 12. Even if the plaintiff had sought money damages in connection with his allegations of due process violations under 42 U.S.C. § 1983, any such claims against the defendants in their official capacities would be barred, since "neither

---

[3] The defendants note that the issue of whether Eleventh Amendment immunity bars Title II ADA claims against states is currently pending before the United States Supreme Court in

a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989).

## II. THE DEFENDANTS ARE NOT SUBJECT TO A FEDERAL LAWSUIT BASED ON THE CONNECTICUT PATIENTS' BILL OF RIGHTS

### A. The Eleventh Amendment Bars The Plaintiff's Claims Against State Officials

The plaintiff's Complaint asserts two causes of action under the Connecticut Patients' Bill of Rights: (1) that the actions of the defendants in placing the plaintiff on a restricted diet without consent or clinical need violated the Connecticut Patients' Bill of Rights, specifically, Conn. Gen. Stat. §§ 17a-541, 17a-542 and 17a-543; and (2) the actions of the defendants which resulted in the plaintiff sleeping on a mattress on the floor of the seclusion room on his unit at Whiting violated the Connecticut Patients' Bill of Rights, specifically, Conn. Gen. Stat. §§ 17a-541, 17a-542 and 17a-544. Complaint, pp. 11-12. Because the State of Connecticut has not waived its immunity to suit in federal court for claims asserted under the Patients' Bill of Rights, these claims must be dismissed for lack of jurisdiction.

The Eleventh Amendment establishes that an unconsenting state is immune from suits brought by its own citizens, as well as citizens of another state. *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 229, 110 S.Ct. 1868 (1990). The Eleventh Amendment is equally applicable to pendent state claims against state agencies and officials brought in federal court. *Harker v. State Use Industries*, 990 F.2d 131, cert. denied 510 U.S. 886, 114 S.Ct. 238 (1993). Where a complaint against state defendants is based upon state law, relief cannot be granted against the state or its officers consistent with the Eleventh Amendment unless immunity from

---

*Tennessee v. Lane*, No. 02-1667. Should the Supreme Court find that the Eleventh Amendment bars such actions, that ruling would require the dismissal of the plaintiff's ADA claims.

suit has been waived by the state or by Congress. *Fund for Animals, Inc. v. Lujan*, 794 F.Supp. 1015 (D.Mont. 1991), affirmed 962 F.2d 1391 (9th Cir. 1992).

With respect to claims based on the Connecticut Patients' Bill of Rights, the pertinent Connecticut statute provides as follows:

> Any person aggrieved by a violation of sections 17a-540 to 17a-549, inclusive, *may petition the superior court* within whose jurisdiction the person is or resides for appropriate relief, including temporary and permanent injunctions, or may bring a civil action for damages.

Conn. Gen. Stat. §17a-550 (emphasis added). It is well-established that a state does not waive its Eleventh Amendment immunity from suit in federal court by consenting to suit only in its own courts. In order for a state statute to constitute such a waiver, it must specify the state's intention to subject itself to suit in federal court. *Port Authority Trans-Hudson Corp. v. Feeney*, supra. As to claims founded on the Patients' Bill of Rights, the State of Connecticut clearly has limited its waiver of immunity to actions brought in the state superior courts. Consequently, the State of Connecticut and its officials are immune from these claims in federal court.

**B. The Defendants In Their Individual Capacities Are Not Subject To Suit For Alleged Violations Of The Patients' Bill Of Rights**

In *Mahoney v. Lensink*, 213 Conn. 548 (1990), the only reported decision addressing this issue, the Connecticut Supreme Court clearly noted that suits against state officials under the Patients' Bill of Rights are official capacity suits, and as such are suits against the state. Specifically, the Court was faced with the question of whether the remedy provided in Conn. Gen. Stat. § 17-206b (now § 17a-550) for violations of provisions of the Patients' Bill of Rights constituted a statutory waiver of sovereign immunity authorizing a "patient in a state mental facility to sue *the state or its commissioners*" in state court. Id at 555 (emphasis added). The Court held that the statute was intended to "abrogate the State's sovereign immunity" and

therefore permitted a direct cause of action. In *Mahoney*, the plaintiff sued the Commissioners of Mental Health , Mental Retardation and the State Police. Id at 551.

In framing the issue of abrogation of sovereign immunity and in identifying the defendants, the Court noted:

> Because the State acts through its officers and agents, a suit against an officer concerning a matter in which the officer represents the State is, in effect, a suit against the State. *University of Connecticut Chapter, AAVP v. Governor*, 200 Conn. 386, 388, 512 A.2d 152 (1986); *Horton v. Meskill*, 172 Conn. 615, 623, 376 A.2d 359 (1977).

213 Conn. at 555 n.9.

What the Connecticut Supreme Court noted with respect to the claims against the Commissioner of State Police based on the Patients' Bill of Rights is fully on point and controlling: "a suit against an officer concerning a matter in which the officer represents the State…is a suit against the State." Id. "The court…rejects the plaintiff's contention that § 17a-550, as construed in Mahoney, provides for personal or individual liability of state employees." *Bradley v. Central Naugatuck Valley Help, Inc.*, 1997 WL 112770 (Conn.Super. 1997). Accordingly, the plaintiff cannot maintain claims against the defendants in their individual capacities based on the Connecticut Patients' Bill of Rights.

### III. THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FOURTEENH AMENDMENT

With regard to his claim that certain of the defendants violated his rights under the Fourteenth Amendment, the plaintiff specifically requests a declaratory judgment that the recommendation made by the defendants to the PSRB deprived him of his due process rights. Complaint, p. 11, no. 1. This allegation fails adequately to state a claim under 42 U.S.C. § 1983 and must be dismissed for that reason.

The complaint appears to allege that the plaintiff has a constitutional right that attaches to his placement within a mental health facility on the basis of a required level of security. The source of any such right is not identified in the complaint, and the defendants maintain that there is no such right. This claim must be distinguished from a claim that the plaintiff's liberty interest has been violated as a result of an involuntary confinement in a mental health facility. Here, there is no such claim. The plaintiff himself raised the issue of his mental status in a criminal proceeding and, as a result, was found not guilty by reason of mental disease or defect. Rather, his claim relates to the level of security at which he was placed pursuant to a legitimate confinement. While not identical, the plaintiff's circumstances are similar to those of an inmate who has a complaint about his specific placement within the prison system. In such a case, a due process right does not attach to the placement of the prisoner in a maximum security setting. *Crane v. Logli*, 992 F.2d 136 (7th Cir. 1993), cert. denied 510 U.S. 889, 114 S.Ct. 245 (1993).

The complaint makes no mention of the defendant Arata in connection with the recommendation to the PSRB. Complaint, ¶ 16. In fact, the only factual allegation specific to the defendant Arata is that she, along with three of the other defendants, denied a transfer request made on behalf of the plaintiff by an advocate. Complaint, ¶ 13. The complaint does not allege that this action constituted a violation of any right, nor does it seek any relief on the basis of the alleged denial of the transfer request. Complaint, pp. 11-12. The only other complaint allegation concerning Ms. Arata is that she "condoned practices" by two other defendants unrelated to the recommendation to the PSRB. Complaint, ¶ 27. Clearly, the complaint fails to state a claim against the defendant Arata in terms of the Fourteenth Amendment contention that the recommendation violated the plaintiff's due process rights.

The complaint likewise fails to state a claim as to the other four defendants. The plaintiff alleges that the defendant Cassidy was the Director of Whiting and the defendant Mullaney was the Chief Executive Officer of Connecticut Valley Hospital. Complaint, ¶¶ 5,6. He does not allege that either of those two defendants was involved in providing treatment to the plaintiff at Whiting or assessing his clinical status for purposes of submitting the recommendation to the PSRB. Neither does he allege that either of them knew or should have known that any assessment of the plaintiff's need for treatment in a maximum security setting was "fictitious." For these reasons, the complaint fails to state a claim against the defendants Cassidy and Mullaney arising out of the recommendation to the PSRB.

There is an additional reason why, as to all of the named defendants, the complaint fails to state a claim under the Fourteenth Amendment on the basis of the recommendation to the PSRB. Under Connecticut law, the only state agency authorized to make a decision as to whether an acquittee requires confinement under conditions of maximum security is the PSRB, under whose jurisdiction are all acquittees determined by the state courts to be "persons who should be confined." Conn. Gen. Stat. §§ 17a-599 and 17a-582 (e)(1). None of the defendants is authorized to make such a determination. While some of the defendants may have offered an opinion to the PSRB as to the conditions of security required for the plaintiff's confinement, it was the PSRB that was charged by statute with the duty to make a decision on that issue.

To establish § 1983 liability, a plaintiff must demonstrate that the defendants' action was the proximate cause of the violation of his constitutional right. *Martinez v. California*, 444 U.S. 277, 110 S.Ct. 553 (1980). The determination of whether the plaintiff required confinement in maximum security, which by statute was the responsibility of the PSRB, was far different from the determination that was considered by the Second Circuit in *Warner v. Orange County*

*Department of Probation*, 115 F.3d 1068 (2d Cir. 1996). In *Warner*, the plaintiff claimed that a probation department recommendation to the state court had violated his constitutional rights. The Court of Appeals found that such a claim satisfied the proximate cause requirement of § 1983. The Court of Appeals specifically noted that

> Court adoption of the probation officer's recommendation is particularly likely when the recommendation deals with a provider of therapy. Judges are unlikely to possess particularized information about the relative characteristics and merits of different providers of therapy. For this type of information, courts generally rely heavily on probation department recommendations.

115 F.3d at 1073.

The role of the state court in *Warner* in considering probation recommendations stands in sharp contrast to that of the PSRB in determining whether a maximum security setting is required for an acquittee. The Connecticut Supreme Court recently characterized the role of the PSRB as follows:

> [T]he placement of the acquittee, in a maximum security mental health facility…requires knowledgeable decisions based upon, inter alia, the appropriateness and type of treatment the acquittee requires and the potential for risk of harm to the staff and other acquittees. *These decisions are best left to the professional discretion of the board*, whose mandate is the protection of the general public.

*Dyous v. Psychiatric Security Review Board*, 264 Conn. 766, 777 (2003). The unique role of the PSRB in arriving at "knowledgeable decisions" about placement of acquittees in a maximum security setting distinguishes this plaintiff's claim from that of the plaintiff in *Warner* and leads to the conclusion that this claim fails to satisfy the § 1983 proximate cause requirement.

**IV.  THE PLAINTIFF HAS NO CAUSE OF ACTION BASED ON *ROE V. HOGAN***

The plaintiff seeks a declaratory judgment that alleged treatment restrictions violated his rights under a federal consent order entered into in *Roe v. Hogan*, Civil No. H 89-570 (PCD).

Simply put, the consent order entered into in that prior federal action does not create a cause of action such as been asserted by the plaintiff.

The defendants request that the Court take judicial notice of the consent order in question, which is part of the Court's file in another case (a copy of the consent order is attached hereto for the convenience of the Court). Paragraph 29 of the parties' Agreement of Settlement, dated December 5, 1990, expressly provides that:

> In the event plaintiffs believe that defendants are in non-compliance with this Agreement, plaintiffs will inform the defendants in writing and afford them ten days to remedy the problem. During this period, the parties will make reasonable, good faith efforts to discuss any identified compliance issues and to resolve these matters through negotiations. In the event that such dispute resolution efforts are unsuccessful, plaintiffs may initiate proceedings in this Court as part of this case, seeking compliance with the provisions of this Agreement which are alleged to have been violated. In such proceedings, the plaintiffs shall seek enforcement of the terms of this Agreement but shall not, in the first instance, seek an order of contempt against any or all of the defendants.

For purposes of the consent order, the term "plaintiffs" includes "all present and future PSRB patients confined in state mental health inpatient facilities." Clearly, the *Roe v. Hogan* consent order was not intended to, and did not create a cause of action that could be pursued in a separate lawsuit by a PSRB patient. For that reason, this claim fails.

## **CONCLUSION**

For all the foregoing reasons, the various claims asserted by the plaintiff fail, and the defendants respectfully request that the Court dismiss his complaint in its entirety.

                                              DEFENDANTS

                                              RICHARD BLUMENTHAL
                                              ATTORNEY GENERAL

                                              Richard J. Lynch
                                              Assistant Attorney General

BY:    _____
                                              Thomas J. Ring
                                              Assistant Attorney General
                                              Federal Bar No. ct08293
                                              55 Elm Street
                                              P.O. Box 120
                                              Hartford, CT  06141-0120
                                              Tel: (860) 808-5210
                                              Fax: (860) 808-5385
                                              Thomas.Ring@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of the Federal Rules of Civil Procedure on this 10th day of February, 2004 to:

Martin Dickinson, Pro Se
70 O'Brien Drive
Middletown, CT 06457

_____
Thomas J. Ring
Assistant Attorney General